UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIJUN M. MIMS, | : | |
|     *Plaintiff*, | : | 3:24-cv-238 (SVN) |
| | : | |
| v. | : | |
| | : | |
| LAPREY, *et al.*, | : | June 21, 2024 |
|     *Defendants*. | : | |

**INITIAL REVIEW ORDER**

*Pro se* Plaintiff Tijun Mims, an inmate currently housed at Cheshire Correctional Institution ("CI"), has filed this civil rights action *pro se* under 42 U.S.C. § 1983. He names Correctional Officers Laprey and Cyr and "10 plus other officers," all of whom are alleged to have worked at MacDougall-Walker CI at the time relevant to this action. Compl., ECF No. 1 at 1–3. Plaintiff asserts claims under the Eighth Amendment to United States Constitution, arising from his treatment while an inmate at MacDougall-Walker CI. Plaintiff seeks relief against Defendants in both their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the

complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[1]  Based on this initial review, the Court orders as follows.

## I.     FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes those facts necessary to provide context for initial review.

At all relevant times during the events described below, Plaintiff was incarcerated at MacDougall-Walker CI.  Compl. ¶ 3.  On September 17, 2022, Plaintiff was informed that he would be housed with a cellmate.  *Id.* ¶ 7.  Before moving the cellmate in with Plaintiff, Defendant Laprey told Plaintiff "to cuff up or take the cellmate."  *Id.* ¶ 8.  Laprey ignored Plaintiff's explanation that his cell status meant that he could not have a cellmate, and Laprey ordered Plaintiff to "cuff up for threats."  *Id.* ¶¶ 8–9.  As Plaintiff attempted to reason with Defendant Laprey, Laprey and other unnamed officers assaulted him.  *Id.* ¶ 9.  Officer Cyr and an Officer John Doe grabbed Plaintiff by his arm and shook him back and forth to stage a struggle.  *Id.* ¶ 10.  As part of this ruse, Defendant Cyr and Officer Doe yelled at Plaintiff to stop resisting.  *Id.*  Plaintiff replied calmly that he was not resisting.  *Id.* ¶ 11a.[2]  At this point, Defendants started punching Plaintiff, smashing his head against the wall, and kicking and punching Plaintiff while he was on

---

[1] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (*per curiam*) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[2] Plaintiff's complaint contains two paragraphs labelled "11."  Accordingly, the Court refers to the first paragraph as "11a," while the second is referred to as "11b."

the ground. *Id.*

After Plaintiff was thrown to the ground, Officer Cyr began sexually assaulting Plaintiff by hitting him in the "buttocks area." *Id.* ¶ 11b.  Defendant Cyr also twisted Plaintiff's thumb in an attempt to break it. *Id.*  Defendant Laprey then held Plaintiff by his dreadlocks to spray mace down Plaintiff's throat. *Id.* ¶ 12.

Plaintiff was taken to the B-Pod unit until a cell opened up in the Restrictive Housing Unit. *Id.* ¶ 13  He was later transferred to Saint Francis Hospital. *Id.* ¶ 14.  At the hospital, Plaintiff was treated with sutures for his right eye, and his right hand was placed in a splint. *Id.*  On the drive back to MacDougall-Walker CI from the hospital, the drivers took the long route because they were told "to make it clear what would happen if Plaintiff said anything" about the incident. *Id.* ¶ 15.  Upon his return to MacDougall-Walker CI, Plaintiff did not receive any meals on September 17 and 18, 2022. *Id.* ¶ 16.

Plaintiff was later served with three total disciplinary reports:  two for assault and one for threatening. *Id.* ¶ 17.  He was found not guilty on the two charges for assault, but he was found guilty on the charge for threatening. *Id.*  As part of DOC's response to the incident, Plaintiff was sent to an administrative segregation hearing. *Id.* ¶ 18.  Plaintiff states that he later "won" that hearing because the video evidence did not show him assaulting the officers. *Id.*

Plaintiff was released from MacDougall-Walker CI on October 11, 2022. *Id.* ¶ 19.  Then, three months later, he was criminally charged for assault against Defendants for the September 17, 2022, incident, and posted bond in January 2023. *See id.* ¶ 19.  On May 26, 2023, Plaintiff's charges for assault were dismissed because the video evidence failed to show that he assaulted Defendants. *Id.* ¶ 20.

On June 13, 2023, Plaintiff returned to DOC custody at New Haven Correctional Center ("NHCC") for an unspecified reason. *Id.* ¶ 21. At NHCC, Plaintiff was treated unfairly. *Id.* He later learned that the mistreatment resulted from a grievance he filed before his release in October of 2022. *Id.*

On December 14, 2023, Plaintiff was sent to Cheshire CI where Plaintiff filed another grievance and gave a statement to the police. *Id.* ¶ 22.

## II.  DISCUSSION

The Court considers whether Plaintiff has alleged any plausible claims under state and federal law.

### A.  Official Capacity Claims

Plaintiff has sued Defendants only in their individual capacities. *Id.* ¶ 4.[3] Plaintiff may pursue individual capacity claims against Defendants for monetary damages, but may not seek injunctive relief against Defendants in their individual capacities, as Defendants would not have the authority to provide injunctive relief in their individual capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011).

As Plaintiff has sought injunctive relief against Defendants and may not have been aware that he could not receive such relief if Defendants were sued only in their individual capacities, the Court will construe the complaint to allege official-capacity claims against Defendants for injunctive relief. Such claims cannot proceed, however. Plaintiff asserts claims against DOC employees who work at MacDougall-Walker CI. As Plaintiff is no longer housed at MacDougall-

---

[3] While the body of Plaintiff's complaint states he has sued Defendants only in their individual capacities, the caption of the complaint references Defendants' individual and official capacities. *See* Compl. at 1. The Court presumes the body of the complaint is correct. Nonetheless, it also analyzes Plaintiff's claims that may be brought against Defendants in their official capacities.

4

Walker CI, his requests for official capacity relief against these Defendants are moot. *See Tripathy v. McCoy*, --- F.4th ---, 2024 WL 2742344, at *3 (2d Cir. 2024) (recognizing that an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

Nor may Plaintiff proceed with claims for damages against Defendants in their official capacities, as such claims are effectively suits against the state, and the Court cannot identify that any exception to the state's Eleventh Amendment immunity applies here. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Therefore, to the extent any claims are brought against Defendants in their official capacities, such claims are dismissed.

B.  Eighth and Fourteenth Amendment Claims

The Court construes Plaintiff's complaint to assert claims of excessive force and deliberate indifference to his health and safety.

Plaintiff's status as either a convicted prisoner or a pretrial detainee dictates whether his claims are analyzed under the Eighth or Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29–35 (2d Cir. 2017). It is not clear from Plaintiff's complaint whether he was a sentenced inmate on September 17, 2022, when the assault occurred. MacDougall-Walker CI houses both sentenced and unsentenced inmates. *See Reynolds v. Quiros*, 990 F.3d 286, 292 n.16 (2d Cir. 2021) (explaining that MacDougall-Walker CI houses long-term sentenced offenders, protective custody offenders, and high bond unsentenced offenders). Thus, it is not clear that the Eighth Amendment—which protects prisoners from "cruel and unusual punishment" at the hands of prison officials—governs his claims of excessive force and deliberate indifference, or if the

5


Fourteenth Amendment—which governs excessive force and deliberate indifference claims against unsentenced inmates—applies. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Koram v. Conn. Dep't Corr.*, No. 3:23-cv-729 (KAD), 2023 WL 4669533, at *1 (D. Conn. July 20, 2023) (citing *Darnell*, 849 F.3d at 29–35).

Because the Court cannot now resolve the ambiguity, the Court analyzes Plaintiff's claims of excessive force and deliberate indifference under both the Fourteenth Amendment and the Eighth Amendment. *See Darnell*, 849 F.3d at 35 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)) (explaining that a Fourteenth Amendment deliberate indifference claim only requires a showing of objective deliberate indifference, whereas an Eighth Amendment claim requires a subjective showing).

          *1.    Excessive Force:  Fourteenth Amendment*

To prevail on a claim of excessive force in violation of the Fourteenth Amendment, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. In other words, a plaintiff must demonstrate both (1) the defendant's purposeful or knowing state of mind, and (2) the objective unreasonableness of his use of force. *See id.* This standard cannot be applied "mechanically"; rather, it "turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Regarding the first element, a defendant must have possessed "a purposeful, a knowing, or possibly a reckless state of mind" to be liable for excessive force. *Id.* at 396. However, if the plaintiff's claim of excessive force amounts to no more than negligently inflicted force, the claim cannot proceed under the Fourteenth Amendment. *See id.* The second element considers whether

the force employed was objectively unreasonable. *Id.* at 397. The force employed will be deemed objectively unreasonable if it was "not rationally related to a legitimate governmental objective," or if it was "excessive in relation to that purpose." *Edrei v. Mason*, 892 F.3d 525, 535–36 (2d Cir. 2018) (quoting *Kingsley*, 576 U.S. at 398).

Here, Plaintiff alleges facts indicating that all Defendants subjected him to a harsh use of physical force despite his compliance with their orders. Assaulting an otherwise compliant detainee is at least reckless, if not indicative of purposeful intent; not rationally related to a legitimate governmental objective; and excessive in relation to the purpose of securing the inmate. *See, e.g.*, *Parsons v. City of N.Y.*, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017) (collecting cases finding that assaulting a compliant prisoner rises to the level of excessive force).

Accordingly, Plaintiff has plausibly alleged a Fourteenth Amendment excessive force claim for purposes of initial review, which may proceed against Defendants in their individual capacities.

### 2. *Excessive Force: Eighth Amendment*

Plaintiff also states a plausible claim for use of excessive force under the Eighth Amendment. To state a claim for use of excessive force in violation of the Eighth Amendment, Plaintiff must allege facts establishing both objective and subjective components. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000). The objective component focuses on the harm done to the inmate in light of "contemporary standards of decency." *Id.* at 21 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The "amount of harm" required "depends on the nature of the claim." *Sims*, 230 F.3d at 21. As the Court has already explained, Plaintiff alleges that Defendants

physically beat him, sexually assaulted him, and forced mace down his throat. These allegations satisfy the objective component on initial review.

"In an excessive-force case, whether conduct was 'wanton' turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 21 (quoting *Hudson*, 503 U.S. at 7). While Plaintiff has not expressly stated that Defendants acted wantonly, the Court finds that Plaintiff has alleged as much for initial review purposes. Plaintiff has explained that throughout his altercation with Defendants that he calmly explained that he had an order to not be housed with a cellmate. When Defendants ignored Plaintiff, they attacked him and sexually assaulted him. An unprovoked attack and assault satisfies the subjective component on initial review. *See Thomas v. Dep't of Corr.*, No. 3:23-cv-1681 (SVN), 2024 WL 1658460, at *4 (D. Conn. Apr. 17, 2024) (collecting cases wherein courts have found that assaulting a compliant and restrained inmate meets the subjective component of an excessive force claim).

Accordingly, Plaintiff has also plausibly alleged an Eighth Amendment excessive force claim for purposes of initial review, which may proceed against Defendants in their individual capacities.

The Court notes that Plaintiff will ultimately be able to proceed only on *either* the Fourteenth Amendment excessive force claim *or* the Eighth Amendment excessive force claim, depending on his status as either a pretrial detainee or sentenced prisoner on the date of the assault. Defendants are encouraged to move to dismiss the inapplicable claim after investigating Plaintiff's status on the relevant date.

*3. Sexual Harassment/Abuse: Eighth and Fourteenth Amendments*

Plaintiff asserts that Defendant Cyr sexually assaulted him by hitting him in the "buttocks area."

The Second Circuit has held that "sexual abuse of a prisoner by a corrections officer" may violate constitutional standards. *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997); *see also Crawford v. Cuomo*, 796 F.3d 252, 256–57 (2d Cir. 2015). A single instance of intentional conduct may constitute a constitutional claim. *Crawford¸* 796 F.3d at 257. "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Id.*

Under the Eighth Amendment, a convicted prisoner must show both subjective and objective elements to state a claim related to sexual abuse: (1) "that the defendant acted with a subjectively 'sufficiently culpable state of mind,'" and (2) "that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Id.* at 256 (quoting *Hudson*, 503 U.S. at 8, 20). It "is not yet clear" whether the standard for a pretrial detainee's sexual abuse claim should be analyzed under *Kingsley*'s objective standard or the Eighth Amendment two-prong standard. *See Johnson v. Cook*, No. 19-CV-1464 (CSH), 2021 WL 2741723, at *11 (D. Conn. July 1, 2021) (collecting cases).

For purposes of initial review, the Court finds that Plaintiff has sufficient factual information to proceed on both claims. Plaintiff provides few facts about Defendant Cyr's alleged sexually abusive contact with his "buttocks area," especially any facts related to Defendant's state of mine during the alleged sexual contact. However, the Second Circuit has explained that a

9

Plaintiff may allege an Eighth Amendment sexual abuse claim based on one incident alone. Given that Plaintiff has alleged that Defendant Cyr made abusive contact with Plaintiff's "buttocks area," drawing all inferences in Plaintiff's favor, Plaintiff has stated an Eighth or Fourteenth Amendment sexual abuse claim for purposes of initial review. Given the context of Plaintiff's assault and seemingly unjustified touching of an intimate area, Plaintiff's allegations warrant further factual development. Accordingly, the Court will permit his Eighth and Fourteenth Amendment sexual abuse claims to proceed against Officer Cyr, with the same admonishment that Plaintiff ultimately will be able to proceed on only one of these theories, and Defendant Cyr is encouraged to move to dismiss the inapplicable claim.

### 4. *Deliberate Indifference to Health and Safety: Eighth and Fourteenth Amendments*

The Court also construes Plaintiff's complaint as alleging Eighth and Fourteenth Amendment claims based on deliberate indifference to his health and safety. Courts have analyzed requests for a single cell within the context of deliberate indifference to safety and medical needs. *See, e.g.*, *Verrette v. Bragdon*, No. 3:20-cv-501 (KAD), 2020 WL 1923242, at *2 (D. Conn. Apr. 21, 2020) (analyzing request for a cell change within the context of a Fourteenth Amendment claim for deliberate indifference to safety, among other causes of action, for a pretrial detainee); *Rivera v. Quiros*, No. 3:23-cv-227 (OAW), 2024 WL 363193, at *4 (D. Conn. Jan. 31, 2024) (same under Eighth Amendment's protections for deliberate indifference to health).

To establish a deliberate indifference claim under the Fourteenth Amendment, Plaintiff must satisfy a "two-prong test comprised of both objective and subjective standards." *McDaniel v. City of N.Y.*, No. 19 Civ. 8735 (KPF) (RWL), 2022 WL 421122, at *6 (S.D.N.Y. Feb. 11, 2022). For the objective prong, the plaintiff must show that "the challenged conditions were sufficiently

10

serious to constitute objective deprivations of the right to due process." *Darnell*, 849 F.3d at 29. For the subjective prong, the plaintiff must also establish that the "officer acted with at least deliberate indifference to the challenged conditions," which, in the context of the Fourteenth Amendment, means that he or she "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Vega v. Semple*, 963 F.3d 259, 273–74 (2d Cir. 2020). Thus, in the Fourteenth Amendment context, the "subjective" prong is defined objectively. *Darnell*, 849 F.3d at 35.

In order to establish an Eighth Amendment claim of deliberate indifference to safety, a prisoner must show that: "(1) 'that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had a 'sufficiently culpable state of mind,' which in 'prison-conditions cases' is 'one of deliberate indifference to inmate health or safety.'" *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Essentially, a Fourteenth Amendment claim mirrors the Eighth Amendment under the objective prong, *Darnell*, 849 F.3d at 30, but applies a less stringent subjective prong, *id.* at 32. Accordingly, because the Court finds below that Plaintiff may proceed with an Eighth Amendment claim, he may also proceed with a Fourteenth Amendment claim.

As to Plaintiff's single-cell status, Plaintiff may proceed with his claim for deliberate indifference against Defendant Laprey. Mindful of Plaintiff's *pro se* status and for purposes of initial review, the Court assumes Plaintiff had a serious need for a single cell for his mental or

physical health needs. *See Gojcaj v. Naqvi*, No. 3:23-cv-1097, 2024 WL 1012905 (VDO), at *5 (D. Conn. Mar. 8, 2024) (making the same finding for initial review). As for the *mens rea* component, Plaintiff has made sufficient allegations to proceed past initial review. Plaintiff alleges that Officer Laprey ignored his explanation about his single-cell status. Construed most favorably, Plaintiff's allegations suggest that Officer Laprey ignored a risk of harm to Plaintiff if he was housed with another inmate, given Plaintiff's physical and mental health need for a single cell. Thus, for initial review purposes, Plaintiff has sufficiently alleged facts to support a claim that Defendant Laprey acted with indifference to his health and well-being in violation of the Eighth Amendment and, as a result, in violation of the Fourteenth Amendment as well. As Plaintiff alleges that Officer Cyr and the other officers were involved in the resulting assault, but not in the conversation concerning single-cell status, this claim proceeds only against Officer Laprey.

Plaintiff may proceed for further development of the record on Eighth Amendment and Fourteenth Amendment claims for damages against Officer Laprey for his indifference to Plaintiff's single-cell status. As described above, Plaintiff may ultimately proceed on only one of these claims, and Defendant Laprey is again encouraged to move to dismiss the inapplicable claim.

    C.    <u>Prison Rape Elimination Act ("PREA") Claim</u>

The Court further construes the complaint as attempting to bring a claim under PREA. Any such claim cannot proceed, however, because PREA does not establish a private cause of action.

"[T]he PREA is intended to compile data and statistics concerning incidences of prison rape and to develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape." *Negron v. Matthews*, No. 3:17-cv-1042 (SRU), 2019 WL 1298558, at *8 (D. Conn. Mar. 21, 2019) (citing 42 U.S.C. §§ 30302-03, 30306-07 (formerly cited as

12

§§ 15602-03, 15606-07)).  The Act does not confer specific rights or causes of action.  *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 279–80 (2002) (finding that Congress does not confer a right absent "an 'unambiguous' intent to confer individual rights").  Consequently, courts in this Circuit have routinely held that there is no private right of action for inmates to sue prison officials for non-compliance with the PREA.  *See Brown v. Rose*, No. 3:16-cv-229 (JCH), 2018 WL 3637474, at *7 (D. Conn. July 31, 2018) ("Because the PREA does not create a private right of action for prisoners, Brown cannot show that he was actually injured if Captain Cichetti prevented him from pursuing a PREA claim.") (collecting cases).

Accordingly, Plaintiff cannot pursue claims based on his alleged sexual assault under PREA.

D. <u>Disciplinary and State Criminal Charges</u>

Plaintiff alleges that he received disciplinary charges for threatening and assault against Defendants, but was only found guilty of threatening.  His allegations indicate that he was later arrested for assault after his release from custody.

As an initial matter, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie*, 105 F.3d at 862.  Thus, Plaintiff cannot assert a constitutional violation of his rights based on his disciplinary report charging him with assault or threatening.

Although it is not clear from his complaint, Plaintiff may be claiming false arrest or prosecution under the Fourth Amendment related to the subsequent assault prosecution that ended in his favor.  "To state a valid claim for false arrest . . . under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law

13

elements of the underlying claims." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (summary order). Under Connecticut law, a plaintiff seeking to bring a false arrest claim must allege that: "(1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause." *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 112 (D. Conn. 2019). In addition, the Second Circuit has held that a plaintiff bringing a false arrest claim under Connecticut law must have had the underlying charges terminated in his or her favor. *See Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (summary order) ("this Court expressly held, invoking Connecticut law, that favorable termination is an element of 'a section 1983 claim sounding in false imprisonment or false arrest.'") (quoting *Roesch v. Otarola*, 980 F.2d 850, 853–54 (2d Cir. 1992)).[4]

Here, Plaintiff has not alleged that any of the named Defendants were involved in the decision to arrest or prosecute him. Accordingly, Plaintiff has not alleged any plausible claim for a false arrest under the Fourth Amendment.

E. First Amendment Claims

Plaintiff's allegation that he was unfairly treated at NHCC in retaliation for his prior grievance filing suggests a claim of First Amendment retaliation.

To plead a retaliation claim, an inmate must plausibly allege: (1) that he engaged in protected speech or conduct, (2) that the defendant took adverse action against the plaintiff, and

---

[4] Some Connecticut Superior Court cases question whether favorable termination is a required element of a false arrest claim. *See Burton v. Mason*, No. 06-UWY-CV-21-5028294-S, 2022 WL 433695, at *7 (Conn. Super. Ct. Jan. 21, 2022). Absent precedential Connecticut court guidance, this Court follows Second Circuit precedent that Connecticut law requires a favorable termination of a prosecution. *See Harris v. Doe*, No. 3:24-cv-151 (MPS), 2024 WL 1344697, at *2 (D. Conn. Mar. 29, 2024). In any event, this claim has been dismissed for failure to meet the first element: the named Defendants' involvement in the arrest or prosecution.

14

(3) that the adverse action was the result of a retaliatory motive, *i.e.*, that there was a causal connection between the protected conduct and the adverse action. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Id.* at 295 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

In the Second Circuit, the filing of administrative grievances and lawsuits are generally viewed to be constitutionally protected activities. *See Zielinski v. Annucci*, 547 F. Supp. 3d 227, 233 (N.D.N.Y. 2021). Thus, the Court concludes that Plaintiff has adequately alleged the first element of a retaliation claim. But even assuming Plaintiff's allegations describe adverse actions, Plaintiff has not alleged that any of the named Defendants were involved with retaliatory conduct at NHCC. Nor do his factual allegations support an inference of a causal connection between the adverse treatment at NHCC and his protected grievance. A plaintiff must allege facts to show that the protected conduct was a substantial or motivating factor for the alleged adverse action. *Warwick v. Doe*, No. 3:20-cv-227 (JAM), 2020 WL 2768804, at *8–9 (D. Conn. May 27, 2020).

Accordingly, Plaintiff's claim of First Amendment retaliation is dismissed.

F.  State Law Assault and Battery Claims

This Court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter

15

jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *See UBS Secs. LLC v. Dondero*, --- F. Supp. 3d ---, 2023 WL 8472322, at *4 (S.D.N.Y. 2023) (discussing supplemental jurisdiction). Plaintiff's complaint raises state law claims of assault and battery that fall within the Court's supplemental jurisdiction.

In Connecticut, a civil assault is defined as "the intentional causing of imminent apprehension of harmful or offensive contact [in] another." *Germano v. Dzurenda*, No. 3:09-cv-1316 (SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011) (quoting *Dewitt v. John Hancock Mut. Life. Ins. Co.*, 5 Conn. App. 590, 594 (1985)). "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Germano*, 2011 WL 1214435, at *22 (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975)).

For purposes of this initial review, Plaintiff's allegations are sufficient to raise an inference that he was subjected to assault and battery by Officers Cyr, Laprey, and the other officers allegedly involved in the assault. Accordingly, Plaintiff may proceed on assault and battery claims against these Defendants in their individual capacities.

G.   Personal Involvement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)).

16

Plaintiff has alleged that ten-plus other officers participated in the assault against him. *See* Compl. ¶¶ 10, 18, 20, 23–26; *see also id.* at 8. Accordingly, Plaintiff may proceed against these Doe Defendants on his constitutional claims for excessive force and on his state law claims for assault and battery. As set forth below, Plaintiff will be given time to identify these officers.

Plaintiff may not, however, proceed with any claims based on his transport back to MacDougall-Walker CI or for the deprivation of meals on September 17 and 18, 2022. Plaintiff alleges that his transport drivers took the long way back to his MacDougall-Walker CI and he was denied meals at MacDougall-Walker CI upon his return and into the next day. But Plaintiff has not alleged facts to reflect that any specific named Defendant was involved with these actions. Accordingly, Plaintiff has not alleged plausible claims for damages under 42 U.S.C. § 1983 based on either of these incidents. *See Wright*, 21 F.3d at 501.

*******

## ORDERS

**Based on the foregoing, the Court issues the following orders:**

The Clerk of Court is directed to add to the docket as Defendants Correctional Officer Cyr as well as Correctional Officers Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, Doe 6, Doe 7, Doe 8, Doe 9, and Doe 10.

Plaintiff may proceed on his individual capacity claims based on:

(1) Fourteenth Amendment and Eighth Amendment violations arising from excessive force against Officers Cyr, Laprey, and Does 1–10;

(2) Fourteenth and Eighth Amendment violations arising from sexual abuse against Officer Cyr;

17

(3) Fourteenth and Eighth Amendment violations arising from indifference to his single-cell status against Officer Laprey; and

(4) State common law assault and battery against Officers Cyr, Laprey, and Does 1–10.

All other claims are DISMISSED.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Officers Cyr, Laprey, and Does 1–10, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **July 22, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. After Plaintiff files this notice, the Court will begin the effort to serve process on Defendants Cyr and Laprey in their individual capacities as described above. However, as described below, the Clerk may not proceed with service against Defendants Doe 1–10 without their identities.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **July 22, 2024**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **July 22, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this

18

Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Doe Defendants**.  The Court advises Plaintiff that the Court cannot effect service of the complaint on Defendants Doe 1–10 because Plaintiff has not provided the first or last names for these Defendants.  Plaintiff will have ninety (90) days from the date of appearance of counsel of the first Defendant to appear in this action to file a notice identifying Defendants Doe 1–10 by their first and last names.  Plaintiff may determine Defendants Doe 1–10 identities by reviewing his materials and by sending a discovery request to counsel for any other Defendant.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 21st day of June, 2024.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE